IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL K. CHESTANG,

        Plaintiff,                  No. 2:12-cv-2064 AC P

    vs.

CALIFORNIA DEPT. OF CORRECTIONS AND REHABILITATION, et al.

        Defendants.         ORDER

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis on his complaint seeking damages and injunctive relief pursuant to 42 U.S.C. § 1983. Plaintiff has consented to the jurisdiction of the undersigned. See ECF No. 4.

        On November 9, 2012, the court screened plaintiff's first amended complaint (ECF No. 5), and dismissed it with leave to amend. See ECF No. 8. In particular, the court found that plaintiff's claims against the California Department of Corrections and Rehabilitation ("CDCR") and Prison Industry Authority ("CAL PIA") were barred by the Eleventh Amendment. See id. at 4. The court further found that there was no indication that plaintiff had exhausted his administrative remedies. Id.

        On February 15, 2013, the court screened plaintiff's second amended complaint, finding that it failed to cure the deficiencies identified in the November 9, 2013 order and

1

dismissing with leave to amend. The court specifically advised plaintiff that no further amendments would be allowed. In particular, the court found that plaintiff had named as defendants entities immune from suit under the Eleventh Amendment. The court additionally noted that plaintiff failed to support his argument that he was excused from exhausting his administrative remedies. The court specifically advised plaintiff that, if he chose to amend the complaint, he "must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights."

Plaintiff has now filed a third amended complaint ("3AC"). ECF No. 14. The 3AC does not cure the deficiencies raised in the court's February 15, 2013 order. Accordingly, the court will dismiss the action for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(1)(b)(1).

*Summary of the Amended Complaint*

Plaintiff alleges that defendants Scott Perkins, Eric Reslock, and Tim Hart, all apparent employees of CAL PIA, were negligent in manufacturing and distributing "Bar and Bitz" brand soap because the soap contained a carcinogen in violation of state law, and the Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution. ECF No. 14 at 1.

Plaintiff claims that he has been incarcerated for 19 years, and that in the last 2 to 3 years, has been forced to use PIA soap because he is indigent. See ECF No. 14 at 2. Plaintiff alleges that he must comply with state grooming regulations for inmates, or face being deemed a "program failure." Id. at 2-3. Plaintiff alleges that PIA soap "was discovered to possess an ingredient called (CARCINOGEN) which is a cancer forming agent." Id. at 3. On July 29, 2012, PIA issued a memorandum recalling the soap. Id. Plaintiff appears to allege that defendants knew that the soap was toxic before July 29, 2012. Id. at 4.

Plaintiff claims that "the damage has been done," but that any "medical issues won't arrive for years to come." Id. at 4. Plaintiff claims that he "has suffered symptoms of Frequent Urination, Nightime [sic] Urination, Bone aches, headaches and changing of the skin

which is consistent with symptoms placing Plaintiff 'at risk' for Bladder, Lung, Neorologic [sic] and Muscular Cancer. . . ." Id. at 5.  He accordingly seeks: (1) monetary damages of $1 million; (2) punitive damages of $10 million "for the mental anguish suffered due to the slow and agonizing MURDER of my existence as the Cancer eats away may [sic] Tissues, and organs," (3) compassionate release; and (4) payment for treatment and care. Id. at 6.

Attached to the 3AC are several exhibits.  Exhibit A is a Memorandum dated July 29, 2012 from the Warden at California State Prison-Solano which reads that "[d]uring CAPLIA's annual review of product Material Safety Data Sheets a trace amount of chemical that is listed for review under the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) as a carcinogen was found to be present in CALPIA's bar soaps." ECF No. 14 at 8.

Exhibit B is an "Updated CAPILA Customer Alert: Bar Soap Products" dated July 30, 2012 from CALPIA which reads that

> [d]uring an annual inspection, a trace amount of a chemical listed as a carcinogen under Proposition 65 was found to be present in the soap's fragrance.
>
> This chemical is a natural organic compound that is listed as a third tier priority for the State of California to study.  It may be 3-5 years before the State issues guidelines with respect to maximum exposure levels.  This product is not hazardous by OSHA criteria and does not contain any carcinogens or potential carcinogens as listed by ACGIH, IARC, OSHA, or NTP.
>
> In the absence of guidance under Proposition 65, CALPIA discontinued using the chemical in this product and recommends that unused products already purchased be returned to CALPIA.

ECF No. 14 at 10.

Exhibit C is a "Material Safety Data Sheet" for Barz & Bitz Bar Soap prepared July 30, 2012 for soaps produced prior to July 28, 2012.  At Section 2, entitled "Hazards Identification," the sheet reads: "EMERGENCY OVERVIEW CAUTION MAY IRRITATE EYES AND SKIN."  At Section 11, entitled "Toxicological Information," the sheet reads that

3

1 the chronic effects of exposure are: "Prolonged or repeated contact may dry skin and cause
2 irritation." The data sheet additionally reads that the effects of acute exposure are:

> Inhalation: May cause respiratory tract irritation. Signs/symptoms may include cough, sneezing, nasal discharge, headache, hoarseness, and nose and throat pain.
>
> Eye: May be irritating to eyes. Signs/symptoms may include redness, swelling, pain, tearing, and blurred or hazy vision.
>
> Skin: May be irritating to skin with prolonged contact. Signs/symptoms may include localized redness, swelling, and itching.
>
> Ingestion: May cause gastrointestinal irritation. Signs/symptoms may include abdominal pain, stomach upset, nausea, vomiting and diarrhea.

ECF No. 14 at 15.

The data sheet further reads that the carcinogenicity of chronic exposure is: "Not hazardous by OSHA criteria. This product does not contain any carcinogens or potential carcinogens as listed by ACGIH, IARC, OSHA, or NTP." Id.

Plaintiff does not identify the allegedly hazardous substance by name in either his pleadings, or in any of his attached exhibits.

*Plaintiff Fails to State a Claim*

Plaintiff seeks money damages, as well as release from custody, because he has used a brand of soap which has been recalled by its manufacturer. Plaintiff appears to claim that, based on the State of California's identification of one of the soap's trace ingredients as a carcinogen, plaintiff is at risk for bladder, lung, brain, and muscular cancer.

Plaintiff, however, does not appear to have cancer, and thus has not yet suffered any injury as a result of his use of the allegedly hazardous soap. Moreover, plaintiff fails to reconcile the unnamed ingredient's label as "carcinogen" by the State of California with the actual risks listed on the soap's data sheet, which does not identify any kind of cancer as a hazard of use.

4

At the very least, plaintiff's allegations are speculative; at worst, they are frivolous. In either case, they fails to state a claim upon which relief may be granted, and the court will accordingly exercise its discretion under 28 U.S.C. § 1915A to dismiss it.

Generally, the Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment claim. Hudson v. McMilliam, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for a violation of the Eighth Amendment, a plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer v. Brennan, 511 U.S. 825, 847 (1994).

A prisoner may state a cause of action under the Eighth Amendment by alleging that prison officials have, with deliberate indifference, exposed him to environmental conditions that pose an unreasonable risk of serious damage to his future health. See Helling v. McKinney, 509 U.S. 25, 35 (1993).

For example, in Helling, the United States Supreme Court found that a Nevada prisoner states a cause of action under the Eighth Amendment by alleging that prison officials exposed the prisoner to levels of second-hand tobacco smoke that posed an unreasonable risk of serious damage to the prisoner's future health where, among other things, the prisoner was housed with a cellmate who smoked five packs of cigarettes a day. 509 U.S. at 35.

The Supreme Court specifically noted, however, that on remand the prisoner would have to show that he himself was being exposed to "unreasonably high levels" of tobacco smoke, and that the district court would have "to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of

which he complains is not one that today's society chooses to tolerate." Id. at 36.

On the other hand, courts in this district have repeatedly found that confinement in a location where Valley Fever is prevalent, in and of itself, fails to satisfy the first element of an Eighth Amendment claim, i.e., that the condition poses an "excessive risk of harm." See, e.g., Sparkman v. California Dept. Of Corrections and Rehabilitation, 2012 WL 6004522 *3 (E.D. Cal. Nov. 30, 2012), citing Smith v. Yates, 2012 WL 1498891, *2 (E.D. Cal. Apr.27, 2012) (citing King v. Avenal State Prison, 2009 WL 546212, *4 (E.D. Cal. Mar.4, 2009) ("[T]o the extent that Plaintiff is attempting to pursue an Eighth Amendment claim for the mere fact that he was confined in a location where Valley Fever spores existed which caused him to contract Valley Fever, he is advised that no courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health."); see also Johnson v. Pleasant Valley State Prison, 2012 WL 1297380, *3 (E.D. Cal. Apr.16, 2012) ("Even if the risk of contracting Valley Fever is higher at PVSP than in other areas of the state, the Court declines to find that, due to its location, the prison itself constitutes a substantial risk of harm to inmates."); Gilbert v. Yates, 2010 WL 5113116, *3 (E.D. Cal. Dec.9, 2010); Willis v. Yates, 2009 WL 3486674, *3 (E.D. Cal. Oct.23, 2009).

The court finds, construing plaintiff's allegations in the light most favorable to him, that plaintiff has failed to describe a condition that, in and of itself, poses an unreasonable risk of serious damage to plaintiff's future health.  Instead, according to the material safety data sheets supplied by plaintiff, the greatest harm presented is irritation to the respiratory tract, eyes, skin, or intestines.[1]  Such potential for irritation does not support a conclusion that exposure to the soap creates a risk that is unacceptable to modern society.

In addition, even if the unnamed ingredient posed an excessive risk of "serious damage to plaintiff's future health," the record reflects that defendants did nothing which could

---

[1] The data sheets for the soap do not attribute the listed harms to the presence of the unnamed ingredient; however, the court will draw this inference in plaintiff's favor.

6

be considered "deliberately indifferent."  Instead, the evidence shows that the defendants ceased production of the soap, and recalled existing stock, after an annual review of product material safety data sheets revealed that the soap included an ingredient named as a carcinogen by the state (ECF No. 14 at 8, 10).[2]  In other words, plaintiff's complaint shows that defendants did not ignore a possible threat to safety, but instead acted to remove the soap from use.

*Conclusion*

Plaintiff's third amended complaint will be dismissed for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915A.  While pro se litigants are generally entitled to notice of a complaint's deficiencies and an opportunity to amend prior to dismissal, a complaint may properly be dismissed without leave to amend where any amendment would be futile.  In this case, plaintiff was specifically directed in each of the court's prior orders to explain how the actions of the defendants violated plaintiff's constitutional rights, and, to date, plaintiff has been unable to do so.

Accordingly, IT IS HEREBY ORDERED that the amended complaint (ECF No. 14) is dismissed for the reasons discussed above, without leave to amend, for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915A(1)(b)(1).

DATED: April 17, 2013.

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:rb/ches2064.B(4)

---

[2]  While plaintiff alleges that "Defendant did not give clear and reasonable warning of Toxic product, in fact they have known about it for the past four years. [sic] which denies due process," this allegation is not supported by any fair reading of the Williams affidavit or the other exhibits.  Instead, the hearsay testimony of Mario Williams, who is not a party to this lawsuit but who is apparently seeking damages from the defendants on account of the soap recall, reads that  defendants tested the soap for toxic chemicals in 2007. ECF No. 14 at 19.  The testimony gives no indication of what chemicals defendants tested for, whether any toxic chemicals were found, or whether the unnamed chemical at issue in this suit was among those tested for in 2007.